UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MICHAEL D. MCGRANAHAN, Chapter 7 Trustee,

      Plaintiff,

  v.

THE INSURANCE CORPORATION OF NEW YORK,

      Defendant.

NO. CIV. 2:07-0065 FCD KJM

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

Plaintiff Michael D. McGranahan ("McGranahan" or "plaintiff"), bankruptcy trustee for Jeff Stewart Drywall, Inc. ("JSD"), moves for partial summary judgment regarding the resolution of certain insurance coverage issues. Defendant The Insurance Corporation of New York ("INSCORP" or "defendant") moves for summary adjudication of its duty to indemnify JSD.[1] For the reasons set for below, plaintiff's motion is GRANTED and defendant's motion is DENIED.

---

[1] Because oral argument will not be of material assistance, the court orders these matters submitted on the briefs. E.D. Cal. L.R. 78-230(h).

1

## BACKGROUND[2]

In April 2006, plaintiff brought action against defendant for breach of the duty to defend, breach of the duty to indemnify, breach of the covenant of good faith and fair dealing, and declaratory relief. In January 2008, plaintiff moved for summary judgment on his claims for breach of the duty to defend and breach of the duty to indemnify. Defendant also moved for summary judgment, or in the alternative, for partial summary adjudication on all of plaintiff's claims. (Ct.'s Mem. & Order, filed Feb. 13, 2008).

The court granted plaintiff's motion for summary judgment on his claim for breach of the duty to defend. However, the court denied both parties' motions for summary judgment on plaintiff's claim for breach of the duty to indemnify because "triable issues of material fact exist[ed] regarding whether JSD acted with intent in installing drywall exposed to mold, and whether an exception covered all damages in the arbitration." (Id. at 20:18-22). Finally, regarding plaintiff's claim for breach of the covenant of good faith and fair dealing, the court denied defendant's motion for summary judgment, rejecting the argument that plaintiff's claim was barred by a two-year statute of

---

[2] Unless otherwise noted, the facts recited herein are undisputed. Plaintiff has not filed any responses or objections to defendant's statement of undisputed facts. (Def.'s Stmt. of Undisputed Facts ("DUF"), filed Sept. 5, 2008). Where the facts are disputed, the court recounts both parties versions of the facts. (Pl.'s Stmt. of Undisputed Facts ("PUF"), filed Aug. 29, 2008; Def.'s Resp. to Pl.'s Stmt. of Undisputed Facts ("DRUF"), filed Sept. 19, 2008; Pl.'s Resp. to Def.'s Opp'n to Pl.'s Undisputed Facts ("PRUF"), filed Sept. 26, 2008).

2

limitations.[3]

A. **The Insurance Policy**

INSCORP issued a Commercial General Liability insurance policy ("CGL policy") to JSD effective from August 1, 2002 to August 1, 2003. (DUF ¶ 1). The policy coverage provides that INSCORP will "pay those sums that the insurance [sic] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Def.'s Ex. A, filed Sept 5, 2008). The policy applies to "property damage" only if: (1) the "property damage" is caused by an "occurrence" that takes place in the "coverage territory" and (2) the "property damage" occurs during the policy period. (Id.) "Property damage" is defined by the policy as:

> (a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> (b) Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

(Id.) "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id.) The CGL policy also provides that defendant will pay, with respect to any claim or suit it defends: "all costs taxed against the insured in the 'suit.'" (Id.) "Suit" is defined as "a civil proceeding in which damage because of bodily injury, property damage . . . to which this insurance

---

[3] The underlying facts pertinent to this case may be found in the court's previous order for summary judgment at McGranahan v. Ins. Corp. of N.Y., 544 F. Supp. 2d 1052 (E.D. Cal. 2008).

3

applies are alleged. 'Suit' includes an arbitration proceeding in which such damages are claimed . . . ." (Id.)

### B. The Arbitration

On or about August 27, 2003, Dunmore initiated binding arbitration proceedings against JSD. (DUF ¶ 5). On January 19, 2004, JSD answered Dunmore's demand for arbitration, and also asserted a counterclaim based on Dunmore's refusal to pay JSD for work performed on other projects. (DUF ¶ 6). On April 14, 2004, the arbitrator issued the following damages for Dunmore: $242,893.77 for remediation; $69,325 for lot discounts and concessions; $38,365.91 for carrying costs; and $51,936.85 for attorneys' fees and costs. (DRUF ¶ 26). In sum, the arbitrator found JSD liable for damages totaling $402,521.53. (Id.) However, Dunmore's damages were offset by $218,847.38 awarded to JSD for contract amounts withheld by Dunmore including interest, resulting in a net award to Dunmore of $183,646.85. (Id.)

On or about July 27, 2004, the Sacramento County Superior Court confirmed the arbitration award and entered judgment in favor of Dunmore and against JSD for $183,646.85, plus costs of $1,762.50. (Pl.'s Ex. A, filed Aug. 29, 2008).

On May 31, 2005, Dunmore sued INSCORP pursuant to California Insurance Code § 11580(b) seeking payment of the judgment against JSD. (DUF ¶ 9). Dunmore did not seek any portion of the set-off awarded to JSD in the arbitration proceedings. (PRUF ¶ 24). Indeed, in opposition to plaintiff's motion to intervene in the lawsuit between Dunmore and INSCORP, Dunmore stated "[it] claims no rights to obtain the amount of setoff for payments previously withheld as determined in the arbitration. Those amounts may, if

4

proven, belong to the estate." (PRUF ¶ 25).  Dunmore's lawsuit against INSCORP was dismissed with prejudice on January 31, 2007 following a settlement between the parties whereby INSCORP satisfied the judgment rendered against JSD.  (DUF ¶ 10).

### C. **The Instant Action**

In January 2008, plaintiff and defendant filed motions for summary judgment.  The court denied both plaintiff's and defendant's motions for summary judgment on the claim for breach of the duty to indemnify, finding that triable issues of material fact existed.  After engaging in two unsuccessful settlement conferences, plaintiff has now filed a motion for partial summary judgment and defendant has filed a motion for summary adjudication regarding the potential scope of INSCORP's duty to indemnify JSD under the CGL policy.

**STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

When parties submit cross-motions for summary judgment, the court must review the evidence submitted in support of *each* cross-motion and consider each party's motion on its own merits. Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001).  The court must examine each set of evidence in the light most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).
/////

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. See Falls Riverway Realty, Inc. v. City of Niagara Falls, 754 F.2d 49, 57 (2d Cir. 1985); Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

## ANALYSIS

**A.   Effect of INSCORP's Payment to Dunmore**

Defendant argues that summary judgment should be granted on plaintiff's claim for breach of the duty to indemnify because it is only legally obligated pay the judgment of $183,646.85 entered on behalf of Dunmore in Sacramento County Superior Court on July 27, 2004. (Def.'s Ex. E). Defendant asserts that because it has paid this judgment, there can be no further monetary obligations under a duty to indemnify.[4] Plaintiff asserts that such payment does not satisfy the obligations under the CGL policy because the payment made by INSCORP to Dunmore was discounted by the set off of $218,847.38, for money owed JSD by Dunmore for wrongfully withheld payments for work performed under the contract. Rather, plaintiff asserts that INSCORP is legally obligated to indemnify JSD for the full amount awarded to Dunmore against JSD in the underlying arbitration.

Under the terms of the CGL policy, defendant only has a duty to indemnify plaintiff for "those sums that the insurance [sic] becomes *legally obligated to pay as damages* . . . ." (Def.'s Ex. A) (emphasis added). An insurer's legal obligation is limited to a "suit." <u>Certain Underwriters at Lloyd's Of London v. Superior Court ("Powerine I")</u>, 24 Cal. 4th 945, 964 (2001). By its unambiguous terms, the CGL policy contemplates that a "suit"

---

[4] On July 27, 2004, Dunmore petitioned Sacramento Superior Court to confirm the arbitration award and enter judgment against JSD for $183,646.85, plus costs of $1,762.50. (Def.'s Ex. E, filed Sept. 5, 2005). Thereafter, on May 31, 2005, Dunmore filed a complaint for money damages against INSCORP seeking payment as a third-party beneficiary of the insurance contract between INSCORP and JSD. (Def.'s Ex. F, filed Sept. 5, 2005).

7

includes "an arbitration proceeding in which such damages [e.g., property damage] are claimed . . . ." (Def.'s Ex. A).  Under the California Code of Civil Procedure, once a party obtains an award in an arbitration, the party may petition the court to confirm the award.  Cal. Civ. Proc. Code § 1285.  Once an award is confirmed, the judgment is entered in conformity therewith and has the same force and effect as a judgment in a civil action and may be enforced like any other judgment of the court.  See id. § 1287.4.  Thus, the judgment entered by the superior court in favor of Dunmore arises out of and is a confirmation of the underlying arbitration award.  As such, and under the circumstances in this case, the judgment of the Sacramento Superior Court cannot be read without reference to the underlying arbitration award.

In calculating the award owed by JSD to Dunmore, the arbitrator reduced the award by $218,847.38 based on Dunmore's withholding of money due to JSD under the contract.  This money was payment owed to JSD for work that was performed and never compensated for.  There is no evidence that this money had any connection to coverage under the insurance policy.  As such, INSCORP has no entitlement to this money.  However, if the court were to look only at the judgment entered by the Sacramento Superior Court, INSCORP would be the beneficiary of this $218,847.38 because it paid Dunmore $218,874.38 less than the amount awarded to Dunmore by JSD by the arbitrator.  Therefore, the court finds that the appropriate calculation of the amount defendant is legally obligated to pay is the sum of the damages awarded to Dunmore from JSD in the arbitration, to the extent

8

such damages are covered by the CGL policy.[5]  This total amount would be credited by the amount already paid by INSCORP to Dunmore on behalf of JSD.[6]

Defendant relies heavily on the California Supreme Court's decision in Powerine I to support its contention that it is only legally obligated to pay the amount ordered by the Sacramento Superior Court.  24 Cal. 4th 945, 964 (2001).  However, the Powerine I court's holding and rationale do not support defendant's argument.  In Powerine I, the insured sought indemnification for costs incurred in complying with orders issued during administrative proceedings.  Because the standard comprehensive general liability insurance policy at issue did not define "suit," the court reasoned that a "suit" referred to a court proceeding initiated by the filing of a complaint.  Powerine I, 24 Cal. 4th at 959 n.3; see Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co., 18 Cal. 4th 857 (1998)).  Since the administrative proceedings were not initiated by the filing of a complaint, the court held the insurer was not legally obligated to pay the costs incurred as a result of those proceedings.  Conversely, in this case, the insured seeks indemnification for money awarded in an arbitration proceeding.  The CGL policy at issue explicitly includes arbitration proceedings in its definition of a "suit."  Further, the arbitration award was

---

[5] Although the court is not entitled to review the merits of the arbitration award, it may look to the award to determine the amount of the damages.

[6] The court notes that defendant is only legally obligated to pay damages to the extent there is a duty to indemnify.

9

confirmed by court order.  Therefore, the facts adjudicated in Powerine I are distinguishable from the facts in this case. Moreover, to the extent defendant asserts that a court order is required to legally obligate an insurer, the Sacramento Superior Court confirmed the underlying arbitration award.

Defendant also contends that to the extent plaintiff seeks the money owed to JSD for money improperly withheld for work performed under the contract, he should sue Dunmore.  However, as a practical matter, Dunmore has already received the money awarded under the arbitration agreement less the money it owed JSD.  Specifically, Dunmore was awarded $242,893.77 for remediation, $69,325 for lot discounts and concessions, $38,365.91 for carrying costs, and $51,936.85 for attorneys fees and costs for a total amount owed by JSD of $402,521.23. However, it also owed JSD $218,874.38 for money it wrongfully withheld.  Therefore, if JSD paid Dunmore the money awarded in the arbitration and Dunmore paid JSD the money awarded in the arbitration, Dunmore would only walk away from the award with $183,646.85, the amount ordered in the judgment by the superior court.  When defendant INSCORP paid that sum to Dunmore, it is as if INSCORP paid the $402,521.23 to Dunmore and Dunmore paid the $218,874.38 to INSCORP.  Thus, Dunmore's obligations under the arbitration award were complete.  In essence, INSCORP was the recipient of the $218,874.36 owed to JSD for work performed because INSCORP received the benefit of a $218,874.38 reduction in payment to Dunmore under the policy.  As such, defendant's argument that plaintiff should sue Dunmore for this amount is without merit.

Therefore, because the court holds that defendant's legal obligation is not satisfied solely by its payment of the judgment, defendant's motion for summary judgment is DENIED.

**B.     Potential Indemnification for Attorneys Fees and Costs**

Plaintiff contends that to the extent defendant owes JSD a duty to indemnify, it is entitled to recover attorneys fees and costs awarded to Dunmore against JSD in the arbitration. Defendant argues that it has no further obligations since it satisfied the judgment rendered against JSD and that plaintiff fails to show that INSCORP's satisfaction of the judgment on behalf of JSD did not include attorneys fees and costs.

As set forth above, defendant's potential legal obligation is not satisfied solely by its payment of the judgment.  If defendant is found to owe a duty of indemnification to JSD, it is legally obligated to pay attorneys fees and costs as set forth in the arbitration award to the extent such fees and costs are covered by the CGL policy.

The operative supplementary payments provision in the CGL policy provides that the insurer will pay, "with respect to any claim or suit we defend: all costs taxed against the insured in the 'suit.'" (Def.'s Ex. A).  Such costs include attorneys' fees awarded to the party suing the insured. See Prichard v. Liberty Mutual Ins. Co., 84 Cal. App. 4th 890, 911-12 (2000) (holding that an insurer was obligated under the terms of a supplementary payment provision to pay all costs taxed against its insured that it defended).  The total arbitration award in favor of Dunmore included $51,936.85 for attorneys' fees and costs. (Pl.'s Ex. D).  Because the arbitration award provided recovery for

1  attorneys' fees and costs to Dunmore, these were costs levied
2  against JSD in the suit, i.e., arbitration proceeding.  Thus,
3  these costs may be properly indemnified by INSCORP under the CGL
4  policy.  Therefore, if defendant is found to owe a duty of
5  indemnification to plaintiff, defendant may be liable for the sum
6  of attorneys fees and costs set forth in the arbitration.  As
7  such, plaintiff's motion for partial summary judgment regarding
8  potential indemnification for attorneys' fees and costs awarded
9  in the arbitration proceedings is GRANTED.

**C.   Potential Indemnification for Lot Discounts and Concessions**

Plaintiff also argues that it entitled to recover for lot discounts and concessions awarded to Dunmore in the arbitrations because such damages resulted from the property damage; thus, they are within the scope of coverage of the CGL policy. However, defendant argues that lot costs and concessions are not covered by the CGL policy and that plaintiff offers no evidence supporting its claim that such damages are not purely economic losses.

The CGL policy provides that INSCORP "will pay those sums that the insurance [sic] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."  (Def.'s Ex. A).  "Property damage" is defined as:

    a.   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b.   Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

Id. In other words, liability for property damage is covered only if some destruction of or injury to or loss of use of tangible property has occurred. Gunderson v. Fire Ins. Exchange, 37 Cal. App. 4th 1106, 1117-1118 (1995). In construing the language of an insurance policy, a court should give the words used their plain and ordinary meaning, unless the policy clearly indicates to the contrary. Giddings v. Industrial Indemnity Co., 112 Cal. App. 3d 213, 218 (1980) (citing Highlands Ins. Co. v. Universal Underwriters Ins. Co., 92 Cal. App. 3d 171, 174-175 (1979); Farmers Ins. Exch. v. Harmon, 42 Cal. App. 3d 805, 809 (1974)). Here, the plain and ordinary meaning of "property damage" provides coverage for "physical injury to tangible property, *including all resulting loss of use* of that property." In context, this phrase "refers to loss of use of tangible property that suffers some physical injury or destruction." Gunderson, 37 Cal. App. 4th at 1119.

In the present case, based on the definition of "property damage" provided in the CGL policy, lot discounts and concessions fall within the scope of the policy and may be properly indemnified. In awarding Dunmore these damages, the arbitrator noted that these costs were "reasonably foreseeable and related to the damage caused by the mold and would be reasonably necessary to sell the particular lots after remediation." (Id.) Thus, these damages, rather than being purely economic losses, arose from the moldy drywall installed by JSD. In addition, as noted in the court's previous February 2008 order on the parties' motions for summary judgment, there was evidence before the court indicating that some of the damage alleged by Dunmore was to

13

property other than the drywall.  (Ct.'s Mem. & Order at 15:11-18).  For example, ECG reports recommended mold remediation work to the cabinets, light fixtures, floor, tubs, and ceilings, among others.  (Id.)  Thus, the moldy drywall caused physical injury to the property, resulting in *loss of use* of that property until the mold could be remediated.  The lot discounts and concessions were, therefore, costs arising from a decrease in the value of the property due to the mold exposure.  As a result, if defendant is found to owe a duty of indemnification to plaintiff, damages for lot discounts and concessions awarded to Dunmore would be properly covered by the CGL policy.  Therefore, plaintiff's motion for partial summary judgment regarding potential indemnification for lot discounts and concessions awarded in the arbitration proceedings is GRANTED.

**D.   Potential Indemnification for Carrying Costs**

Plaintiff further contends that it is entitled to recover carrying costs, which were awarded to Dunmore as damages for the interest lost as a result of the delay in not being able to sell the homes contaminated by mold and which had to be remediated. Plaintiff argues that these damages fall within the CGL policy because they constitute property damage caused by the mold remediation process.  Conversely, defendant contends that there is no evidence as to what the carrying costs awarded by the arbitrator were for and, thus, plaintiff fails to meet its burden that these damages are covered under the CGL policy.

Similar to the argument set forth above, carrying costs are damages properly covered by the CGL policy.  Like the lot discounts and concessions, the arbitrator awarded carrying costs

of $38,365.91 to Dunmore because these were costs "reasonably foreseeable and related to the damage caused by the mold and would be reasonably necessary to sell the particular lots after remediation." (Pl.'s Ex. D). The moldy drywall caused physical injury to the property, resulting in *loss of use* of that property until the mold could be remediated. The carrying costs were, therefore, damages arising from a delay in selling the contaminated homes because Dunmore had to hold onto the properties longer for remediation. Thus, if defendant is found to owe a duty of indemnification to plaintiff, damages for carrying costs awarded to Dunmore would be properly covered by the CGL policy. Accordingly, plaintiff's motion for partial summary judgment regarding potential indemnification for carrying costs awarded in the arbitration proceedings is GRANTED.

**E.   Applicability of Exclusion M**

Finally, plaintiff asserts that the impaired property exclusion in the CGL policy precluding insurance coverage for property damage to impaired property that has not been physically injured does not apply. Plaintiff argues that there was no "impaired property" because the property could not have been restored by simply removing and replacing the moldy drywall. Defendant contends that such an exclusion may apply for some, if not all, the claims made against JSD.

The impaired property exclusion provides no coverage for property damage to "impaired property."

/////
/////
/////

> "Impaired property" means tangible property other than "your product" or "your work" that cannot be used or is less useful because:
>
> (a) It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
> (b) You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
>
> (a) The repair, replacement, adjustment or removal of "your product" or "your work;" or
> (b) Your fulfilling the terms of the contract or agreement.

(Def.'s Ex. A).

An insured has the burden of establishing his or her claim comes within the scope of basic coverage. See American Star Ins. Co. v. Ins. Co. of the West, 232 Cal. App. 3d 1320, 1325 (1991) and Royal Globe Ins. Co. v. Whitaker, 181 Cal. App. 3d 532, 537 (1986). However, it is the defendant insurer's burden to show that a policy exclusion applies. American Star Ins. Co., 232 Cal. App. 3d at 1325; Royal Globe Ins. Co., 181 Cal. App. 3d at 537; Clemmer v. Hartford Insurance Co., 22 Cal. 3d 865, 880 (1978).

As set forth in the court's prior summary judgment order, plaintiff has demonstrated a prima facie case of coverage under the CGL policy. Moreover, plaintiff also presents evidence to support his assertion that the impaired property exclusion does not apply because the property could not have been restored by simply removing and replacing the moldy drywall. Specifically, plaintiff points to the underlying arbitration award, which states that "the mere removal and replacement of the sheetrock by the Respondent [JSD] was not only inadequate, . . . ., but could

16

have actually exacerbated the situation by the release of mold spores in the air." (Pl.'s Ex. D).

In contrast, defendant fails to present any evidence or argument that raises a triable issue of fact that the exclusion applies. Rather, defendant merely makes the conclusory assertion that "it is entirely possible, if not probable, that the impaired property exclusion could apply to preclude coverage for parts, if not all, of the claim made against [JSD]." (Def.'s P. & A. in Opp'n to Pl.'s Mot. for Summ. J., ("Def.'s Opp'n") 9:7-10, filed Sept. 19, 2008). In absence of any support for this contention and in light of plaintiff's evidence to the contrary, defendant has failed to meet its burden regarding the application of the impaired property exclusion. Therefore, plaintiff's motion for partial summary judgment regarding the inapplicability of the impaired property exclusion is GRANTED.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is DENIED and plaintiff's partial motion for summary judgment is GRANTED.

IT IS SO ORDERED

DATED: November 10, 2008

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE